This is a supervised release hearing and the Supreme Court has said there are minimum due process requirements that the government and the court need to protect during these hearings. They're not given the full-fledged constitutional protections. Kagan Can I just direct the argument a little? Because it seems to me that there's no dispute, and you don't dispute, as I understand it, that there was sufficient evidence with regard to the revocation and that these heresy letters don't matter with regard to that. Pardee The one and only violation alleged by probation was the drugs. Kagan Right. Pardee And that is correct. He had admitted that. Kagan All right. So therefore, wasn't the evidence really on sentencing, not on revocation? Pardee Well, Your Honor, I think that the evidence went to uncharged allegations. Kagan Pertinent to sentencing. Pardee Pardon? Kagan Pertinent to the sentencing. And in other words, what I don't understand is why this isn't being judged simply by sentencing standards as to which the heresy is fine. Pardee I understand that. And there have been some other cases. There's an Eighth Circuit case that I found, if I can just scroll through this for just a minute, in which the same issue arose, basically that there was sufficient evidence to show the violation, but all of this other evidence that came in still required remand. Because basically, the harmless error analysis under the Constitution is a little bit different than a sufficiency of the evidence standard. Kagan But I'm not asking that question. I'm saying that if the evidence on revocation is not disputable or disputable, therefore, the evidence goes to sentencing. If this was simply a sentencing hearing, there would be no problem with these letters. Is that right? Pardee I believe so, yes. Kagan All right. So what's the problem? Pardee I don't think this was a sentencing hearing, Your Honor. I think this was a supervised violation hearing. And the reason I'm asking is that there's no issue about the supervised release for revocation. You're not contesting the supervised release for revocation. He's not contesting the one, the use of the cocaine. He's only contesting the sentence. Pardee Yes. Kagan Okay. So I'm baffled. Pardee Well, I'm trying to make an argument. Kagan Well, what about the notes, the refusal to turn over the notes? Pardee The Jenks Act notes, Your Honor. Kagan I'm sorry? Pardee The Jenks Act violation. The notes by the therapist or the treatment provider, that was the second allegation that we made. And basically, he came up with a new violation and said that according to his notes, this violation occurred. And that the Jenks But the sentencing wasn't based on the notes, was it? Well, I think, Your Honor, the sentencing, which was a 24-month maximum, statutory maximum sentence, which is well above the guideline sentence for the allegation alleged, was pretty significant. And I think that the district court took in all of the evidence that was submitted. And what's frustrating is, in a sense, Mr. Pardee was kind of sandbagged. The government brought in all this evidence of uncharged allegations, and he wasn't provided an opportunity to confront any of this evidence. And the court used this to give him a 24-month sentence. Well, there are two things about the notes that are not clear to me. One, it's not clear to me that they were in the custody of the government. And two, it's not even clear to me that there were Jenks-type notes in the sense that they were, you know, more or less verbatim statements of the witness. I understand that, Your Honor. The defense counsel did make the objection, though, at the time of sentencing, and those issues could have been addressed if the district court had gone through the proper procedure. Generally, when a Jenks Act violation objection is made, then the court determines those questions. Is this in the position of the prosecutor, and do these qualify? That was just never done in this case. The court just considered that its only option was to continue. Well, but you have to have some basis for claiming that they're Jenks material. Oh, sure. And the witness in this case said, these are my notes, and according to my notes, this is what happened. So they were Not the same as saying, you know, it's a verbatim recordation of my statements. No, and I don't think that that's necessary to be a Jenks Act note. I think that what it has to be is a statement. It's pretty close to that, to be a Jenks statement. Well, a statement prepared and adopted by the witness as his or her statement. And definitely, these notes would qualify if the witness prepared them and then used them as the basis for his testimony. But they certainly were not the witness's statement. Well, the witness prepared the notes. Not as his statement, though. I would say they're his statement because he was testifying based on those notes. He wasn't saying, according to my memory. He was saying, according to my notes. But they didn't purport to be a statement by him. In other words, your argument, as I understand it, is that there were statements by Pardeen, not that there were statements by him, by the witness. Isn't that right? The witness was saying, according to my notes, Pardeen made certain statements. Okay. So they weren't a statement by the witness, on any theory. No, but what he was testifying to was his notes, not his memory. Okay. And so, you know, I mean, under the Jenks Act we're going to wait a minute. Wait a minute. You mean to say he had the notes with him at the hearing? No, he did not, at least not that we know of. Then how can he say, according to my notes, if he didn't have them there? Well, that's what he testified to. He said, according to my notes, this is what happened. Well, what he meant was, according to my recollection of my notes. That's what he meant. I hope. I don't know. Well, he didn't have the notes there, did he? If he did, you could say, can I see your notes? No, he didn't. And we asked for them, but they didn't provide them. The witness didn't provide them. And he didn't have it there with him, because he didn't have it there with him. Not that we were aware of. Not that we were told that he had them there. All right. Counsel, do you want to reserve your remaining time? Yes. You may do so. Thank you. We'll hear from the government. Good morning, Your Honors. Pamela Byerly on behalf of the United States out of the Spokane office in the Eastern District of Washington. And, Your Honor, as to the letters which are considered to be the hearsay evidence introduced by the Court, it is the government's position at the time and is the position now that those letters were going to Senate scene and dealt with danger to the community, and that the Court had already made its decision back on there was actually a hearing on June 7th in which the Court advised the parties that he intended to revoke defendant's Yes. But he didn't say that he was going to sentence him to 24 months. He said, I'm thinking of that. Your Honors, I believe, as I recall from the record, he did say he was going. And I believe it was in his order that he planned to sentence him to 24 months. Well, it wasn't. He said, I'm considering it. I may. I'm thinking of that. But he didn't say he would. That is correct, Your Honor. And the court goes on. Well, and so then the hearing was continued because there was a letter introduced at that June 7th hearing from Mr. Stanfield. Therefore, at the next hearing on the 16th, Mr. Stanfield was present and actually did testify and read his letter into the record. And then two more, and of course, the probation officer testified as well. And there was nothing contested that the government's aware of at all regarding the defendant using the drugs. Everyone was in agreement he had used drugs. And that was the only violation before the Court, and the only violation the Court was ruling on. And the course of Mr. Stebbins' — oh, I guess I'm going — as far as the letters, then there are the two letters that were introduced that were in the government's opinion and the government's position is that those letters went to sentencing. They didn't deal that much with the drug issue. That was already taken care of. But in those two letters, in the government's opinion, from looking over those letters in addition to Mr. Stanfield's written testimony and letter, they did not see anything new. They concurred with what Mr. Stanfield testified to. The government — Was that the basic reason why the Court denied the opportunity for cross-examination because there was nothing new? That was the impression. Or was there some other reason? Definitely, in the record, it says that as to Mr. Garcia's letter, that there was nothing new. It just confirmed what he'd already heard. But he did rely on it. I mean, he relied on the fact that three people thought this about his future dangerous nervousness rather than just one. Absolutely. So that if there were a hearsay requirement with regard to the sentencing, it might actually make a difference. That is true, Your Honor. However, I believe that because the case law regarding using hearsay in regard to sentencing, we're just dealing with some indicia of reliability as the cases look to. And certainly here, I think the government's position was at the time that all of those witnesses were not necessary. There was certainly enough, at least some indicia of reliability as to those two letters that were presented to the Court by the probation officer who had met with these treatment providers on a number of occasions and had been utilized by the probation office. Well, if you assume this proceeding is governed by Morrisey or the Morrisey-type rules, then the Court has to have some justification for not permitting the witness who wrote those witnesses who wrote those letters to be cross-examined, right? That's correct, Your Honor. And some good reason. Good reason. That's true. And I believe that there are – there is case law that says that sometimes just the expense of bringing in additional witnesses, considering all of the circumstances, can be good reason enough. Was that a reason you're at the expense of bringing them in? I don't know if there's even necessarily an expense. Are they from out of State or something like that? Your Honor, when we're dealing with this was a sentencing issue, then I don't believe hearsay was allowed. And there was only an issue of reliability needed, and, therefore, there was no need to bring in each and every witness. Is there a distinction that Judge Verzal mentioned between the, you know, finding the violation and the – for purposes of sentencing? Well, for purposes of sentencing, I think the Court was mostly concerned about the danger of the community. I think the Court made it very clear that was his concern. And I might add, if I may – What does that mean? What do you mean? I believe the Court was not only concerned about defendant had not followed through the cover – the Court had given the defendant two opportunities by modification to avail himself of the treatment. That wasn't happening. Then he had information, the defendant was a Class III sex offender, and he had information not only from these treatment providers, but from the pre-sentence report, from another treatment provider back when he was treated on a prior sexual offense conviction, that when this defendant is involved in drugs and alcohol, he is at great risk of reoffending. So I don't believe it was just based on – certainly, those two letters were cumulative, but he also had a probation officer, the pre-sentence report, and a live witness there telling him exactly the same thing. I think that was the Court's concern as far – at revocation, I think he felt he'd availed him of everything he could do, and now there had become a risk of the community. As he continued to try to treat him, and I think that because he mentioned Buttner, and he very much wanted the defendant to become involved in treatment for himself, which would certainly help the defendant as well as the community, I don't think the Court ever gave up on defendant. He felt like this would be a worthy opportunity for defendant to get further treatment, and better treatment, and danger of reoffending. Sotomayor, in order to have the Buttner treatment? I believe that the Buttner sentence, you have to have more than – it has to be more than a year. I know the Court knew this, that there has to be a certain sentence imposed before Buttner will actually accept a defendant. I believe the Court had a case law to support the proposition that if you have a single hearing on revocation, which is what we – this wasn't bifurcated the way sentencing really is. Right. That the Morrissey standard doesn't directly apply. In other words, I posited that you could split it up and say, well, all this bunch of sentencing. Is there any case law supporting that proposition? I had not. I thought that was an interesting proposition. I'm not aware of ever a supervised release hearing being bifurcated. In my experience, and I'm not aware of any case law, Your Honor. There certainly may be some. In my experience – Ordinarily, it all happens at one hearing. They all happen at one hearing. How do the standards apply at that point? The different hearsay standards, how do they apply? Correct. I think the hearsay statements then come in. I think the Court can distinguish how he's using those hearsay statements. All the Court had defined was the defendant had used drugs in violation. And, in fact, this one statement, which I'd better get on to, this one statement that the government was not in government's possession, I think the record's clear. Defendant told the Court he was not – did not have any of his records with him. He was relying on his memory at the beginning of his testimony. And as to the statement – Are you talking about the notes? He had no notes with him. Okay. But, I mean, you – He was relying on – I'm sorry. I may have missed – You mean the witness, not the defendant. You said the witness. I'm so sorry. Yes. The witness stated to the Court at the beginning that he had none of his records with him, none of his notes. He was relying on his memory. And one question on cross-examination, he had some – he did bring up a point about one particular incident that had never been alleged by probation, and that was not one of the violations. And everything I've read from the record, I don't see how the Court even mentioned it. I don't think he considered it. And my time's going. Are there any other questions that are a little bit more relevant than what I'm spurting out here? I think I'd just assume, leave it with you, Your Honor. All right. Thank you, counsel. Ms. Stobb, you have some reserve time. The Eighth Circuit case, Your Honor, that I mentioned before was U.S. v. Zint Graf. And I apologize, it's not in my briefs, but I found it this morning. It's 20F3rd. Counsel, we have a practice in the Court. You must file three copies with the Court and a copy with your opposing counsel. Okay. Listing the full citation. I understand. Okay. And you may do so before you leave the room, as a matter of fact, with the deputy clerk. Okay. I will do that, then. Thank you. Unless there are any other questions. Thank you. Thank you very much. The case just argued will be submitted for decision.
judges: O'scannlain, Tashima, Berzon